IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01565-PAB-BNB

SOLA SALON STUDIOS, LLC,
a Colorado limited liability corporation,

      Plaintiff and Counterclaim-Defendant,

v.

CECELIA HELLER, as successor trustee for the David H. Simon 1971 Trust,
CECELIA HELLER, as successor trustee for the Peter N. Simon 1971 Trust, and
CECELIA HELLER, as successor trustee for the Michael B. Simon 1971 Trust,

      Defendants and Counterclaimants.

---

### ORDER

---

This state-law contract case comes before the Court on the motions for judgment as a matter of law and a new trial [Docket No. 109] filed by defendants.  The motions are fully briefed and ripe for disposition.  This matter is also before the Court on several outstanding claims for equitable relief.  A five-day jury trial was conducted on plaintiff's claims and defendants' counterclaims for which legal relief was sought.  The parties also sought equitable relief from the Court on various claims and counterclaims.  After the jury's verdict, the Court ordered the parties to provide status reports detailing their positions regarding the remaining equitable claims.  The parties complied with this order and filed separate status reports [Docket Nos. 103, 104].  The Court will address the outstanding equitable claims at this time.

## I.  BACKGROUND

### A.  Brief Factual Background

As the facts related to this case have been laid out in more detail in its summary judgment order, *see* Docket No. 85, the Court will not recite them in full here but will only briefly summarize the factual background.  This case arises out of a landlord/tenant dispute.  Plaintiff Sola Salon Studios, LLC ("Sola") leases retail space from defendant Cecelia Heller, as successor trustee for the David H. Simon 1971 Trust, the Peter N. Simon 1971 Trust, and the Michael B. Simon 1971 Trust (collectively, the "Trustee").  Sola operates a health and beauty salon in a retail development known as Fashion Plaza, located in Denver, Colorado.  Under its business model, Sola enters into license agreements with independent contractors who provide a number of health and beauty services within Sola's studios.  Sola's lease, which was twice amended, includes several provisions related to these licensees, as well as provisions related to Sola's obligation to pay a pro-rata share of the entire building's operating expenses.  When Sola originally executed the lease, Fashion Plaza was owned by an earlier landlord, who subsequently sold the property to the defendant Trusts.  Some time after the Trusts purchased the building, several disputes arose between the parties related to the meaning of these lease provisions and each party's rights and obligations under the lease.

### B.  Procedural Background

Sola claimed in its amended complaint that the Trustee breached the lease in three ways: (1) by applying a 105% cap on the yearly increase in operating expenses

when the lease as amended requires a 5% cap on a non-cumulative basis; (2) by failing

to limit Sola's pro-rata share of operating expenses to 39% in 2007; and (3) by charging

Sola for additional janitorial expenses outside of Sola's pro-rata share of general

operating expenses.  *See* Docket No. 19 at 7.  The Trustee, in turn, counterclaimed that

Sola breached the lease: (1) by refusing to pay the Trustee rents from its stylists, due

under paragraph 17E of the lease; (2) by entering into license agreements with its

stylists in violation of paragraphs 17A and 17B of the lease; and (3) by assigning its

license agreements to third parties as collateral for loan obligations in violation of

paragraph 17B of the lease.  *See* Docket No. 39 at 7.

The Trustee moved for summary judgment on its counterclaims and the Court

denied the motion [Docket No. 85].  The Court found that the language in the August

31, 2005 amendment relating to the cap was ambiguous and was amenable to

reasonable interpretations as placing either a 5% or 105% cap on yearly increases.

See Docket No. 85 at 9-10.  The Court further found that it could not hold as a matter of

law that Sola had breached paragraph 17E of the lease by failing to remit to the Trustee

portions of the rent it received from its stylists.  *See id.* at 11-12.  The Court also found

paragraph 17B of the lease was ambiguous regarding Sola's ability to enter into license

agreements without permission of the landlord.  *See id.* at 12-15.  Finally, the Court

found that it could not conclude as a matter of law that Sola had breached the lease by

assigning its license agreements to third parties.  *See id.* at 15-17.

The jury trial in this matter took place from July 26, 2010 through August 2, 2010.

At the close of Sola's evidence, the Trustee made two motions for judgment as a matter

of law pursuant to Fed. R. Civ. P. 50(a).  The Court denied the first, finding that the

Trustee was not entitled to judgment as a matter of law on Sola's claims for breach due

to Sola's alleged failure to comply with paragraph 5(d) of the lease.  Docket No. 112 at

2-7.  The Court granted the Trustee's second motion and entered judgment on Sola's

claim for breach of the implied covenant of good faith and fair dealing.  Docket No. 112

at 7-20.

At the close of all the evidence, Sola also made two motions for judgment as a

matter of law on the Trustee's counterclaim for breach of the lease.  The Court denied

Sola's first motion, finding that the Trustee's theory that Sola breached the lease by

entering into license agreements instead of subleases was still viable.  Docket No. 105

at 2-3.  The Court granted Sola's second motion, ruling that no reasonable jury could

find Sola had not cured any breach that occurred when Sola assigned its licenses to a

third party.  Docket No. 105 at 3-5.  The Court further ruled as a matter of law that

Sola's license agreements with its stylists were not "interests in the lease" under

Colorado law.  Docket No. 105 at 5-7.

The jury found in favor of Sola on its first breach of contract claim, finding that

the lease set a cap on annual charges for operating expenses for which Sola was

responsible by calculating the prior year's charges to Sola and adding 5%, and awarded

Sola $68,664 in damages.  Docket No. 102-1 at 1-2.  The jury also found in favor of

Sola on its second breach of contract claim, finding that the Trustee failed to limit Sola's

pro rata share of operating expenses to 39% for 2007 and additionally found that Sola

did not waive its right to assert this claim by failing to comply with paragraph 5(d) of the

lease.  Docket No. 102-1 at 1-3.  The jury found, however, that Sola suffered no actual

4

damages as a result of this breach.  Docket No. 102-1 at 3-4.  The jury further found for

Sola on its third breach of contract claim, finding that the Trustee failed to limit Sola's

charges for janitorial expenses as provided for in the lease, as amended, and awarded

Sola $24,705 in damages on this claim.  Docket No. 102-1 at 3-4.  Finally, the jury

found against the Trustee on her breach of contract counterclaim, finding that the lease

did not prohibit Sola from entering into licenses with its stylists.  Docket No. 102-1 at 5.

## II.  RENEWED RULE 50 MOTION

### A.  Legal Standard

Federal Rule of Civil Procedure 50 provides that judgment as a matter of law is

appropriate where "a party has been fully heard on an issue during a jury trial and the

court finds that a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "[I]n entertaining a motion for

judgment as a matter of law, the court should review all of the evidence in the record."

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Although

courts are to *review* all of the evidence, there are limits as to what evidence they can

*consider*.  For example, "the court must draw all reasonable inferences in favor of the

nonmoving party, and it may not make credibility determinations or weigh the evidence."

*Id*.  Moreover, the Court "must disregard all evidence favorable to the moving party that

the jury is not required to believe."  *Id.* at 151.  In other words, "the court should give

credence to the evidence favoring the nonmovant as well as that evidence supporting

the moving party that is uncontradicted and unimpeached, at least to the extent that the

evidence comes from disinterested witnesses."  *Id.*

5

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict.  *See* Fed. R. Civ. P. 50(a)(2) & (b).  However, the Court is advised to grant such relief "only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion."  *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993).  The Court applies the same legal standard for a renewed motion under Rule 50(b) as is applied to the original motion for judgment as a matter of law under Rule 50(a).  *See, e.g.*, *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1269-70 (10th Cir. 2008).  However, there is an added limitation in that generally "[t]he renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion."  *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739-40 (10th Cir. 2007).  In diversity cases, federal law governs whether judgment as a matter of law or a new trial is appropriate, but "the substantive law of the forum state governs analysis of the underlying claim."  *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., LP*, 2010 WL 4923979 at *4 (10th Cir. Dec. 6, 2010) (citations omitted).

## B. <u>Analysis</u>

The Trustee argues that judgment should enter against Sola on its claims for breach of the lease because Sola failed to comply with the requirements of paragraph 5(d) of the lease.  Paragraph 5(d) provides that:

> After written notice to Landlord, Tenant shall have the right at its own expense and at a reasonable time during Landlord's regular business hours within thirty (30) days after receipt of the Statement to engage a certified public accountant ("Tenant's Accountant") to audit Landlord's

6

books relevant to the disputed amount of Landlord's Statement of Operating Expenses under this Paragraph 5.  In the event Tenant does not audit Landlord's books and deliver the results thereof to Landlord within said 30-day period, the terms and amounts set forth in the Statement shall be deemed conclusive and final.

Pl.'s Trial Ex. 9 (Lease) at 4.  The special verdict form asked the jury whether Sola had waived its right to assert a claim that the Trustee failed to limit Sola's pro rata share of Fashion Plaza's operating expenses to 39% of the total operating expenses for 2007 by not complying with paragraph 5(d) of the lease.  The jury was further instructed that Sola could not prevail on its second claim for breach of contract if the jury found plaintiff waived its right to assert this claim under paragraph 5(d).  No other instruction or question on the verdict form addressed paragraph 5(d) of the lease.

The Trustee claims that the uncontradicted evidence showed that Sola did not comply with the terms of paragraph 5(d).  Therefore, the Trustee contends, judgment as a matter of law should have entered on all of Sola's breach of contract claims because Sola waived its right to challenge any charges from the Trustee for operating expenses. The Court, however, found that although paragraph 5(d) applies to disputes about calculations of operating expenses, it does not apply to disputes about the terms of the lease itself.  Sola's first and third claims for breach of the lease were premised on Sola's belief that the Trustee had misinterpreted the terms of the lease, both by applying the higher cap on increases and for overcharging for janitorial expenses.  The Court, therefore, found that paragraph 5(d) did not apply to these claims and that having an accountant audit the Trustee's books would in no way have been relevant to the parties' disagreements.  *See* Docket No. 112 at 3-7.  The Trustee now points to the

words "terms and amounts" in paragraph 5(d), contending that Sola was bound to accept the Trustee's interpretation of the lease terms given that it did not have an accountant audit the Trustee's books; however, this argument was not raised in the original motion and thus the Trustee has waived it.  *See* Docket No. 112 at 2-7; *Marshall*, 474 F.3d at  739-40.  Nevertheless, even if this argument were preserved, it would fail.  When read as a whole, paragraph 5(d) is unambiguous in that it only pertains to disputes regarding the calculation of the charges and not to disputes about the terms of the lease itself.  *See* Pl.'s Trial Ex. 9 (Lease) at 4.  Therefore, the Court will deny the Trustee's renewed motion for judgment as a matter of law.

## III.  MOTION FOR A NEW TRIAL

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues - and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A motion for new trial may be granted on any error, so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights."  *Henning v. Union Pacif. R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).

### B.  <u>Analysis</u>

#### 1.  *Paragraph 5(d)*

The Trustee argues that, if her motion for judgment as a matter of law is denied, she should be granted a new trial because the Court erred by refusing to allow the jury

to consider whether Sola waived its first and second claims for breach of the lease by not complying with paragraph 5(d).  As discussed above, the Court properly determined that paragraph 5(d) did not apply to these claims.  Therefore, the Court did not err in refusing to allow the jury to consider whether Sola waived its first and second claims for breach of contract under paragraph 5(d).

Moreover, contrary to the Trustee's argument, the jury's finding that Sola did not waive its second breach of contract claim under paragraph 5(d) was supported by the evidence admitted at trial.  Sola's second claim for breach of the lease claimed that the Trustee overcharged Sola for operating expenses in 2007 by calculating its pro-rata share as 40% of the total expenses for the building, instead of 39% as required by the lease.  The Trustee's continued assertion that Sola definitively did not comply with the express requirements of paragraph 5(d) is specious.  Sola submitted evidence that its attorney sent a letter to the Trustee on May 2, 2008, stating that Sola was exercising its right to conduct an audit under paragraph 5(d) of the lease, *see* Pl.'s Ex. 79 at 2, and the Trustee introduced no evidence that its records were ever made available to Sola or its accountant for such an audit.  The jury reasonably concluded based on these facts that Sola had not waived its right to challenge the 40% calculation under paragraph 5(d), and the Court will not grant a new trial on these grounds.  Therefore, the jury verdict is not "clearly, decidedly, or overwhelmingly against the weight of the evidence" and trustee is not entitled to a new trial on these grounds.  *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).

## 2. Counterclaim for Breach

The Trustee argues that the Court erred by granting Sola's Rule 50 motion and entering judgment against the Trustee on her counterclaim for breach of the lease.  The Trustee's counterclaim asserted that Sola breached the lease by assigning its license agreements with stylists to third parties in violation of paragraph 17A.  The Court found, however, that paragraph 19A(7) applied to this breach.  This provision allowed Sola to cure within fifteen days of the Trustee's notice of the breach.  But, if Sola could not "reasonably cure" the breach within fifteen days, Sola would have sixty days to cure so long as it commenced the cure within fifteen days and diligently pursued it to completion.  Sola obtained releases of its assignment sixteen days after the Trustee sent its notice.  Moreover, Sola submitted uncontradicted and unimpeached testimony that the bank to whom it had assigned its licenses generally requires one to two weeks to process releases.  Based on this testimony, the Court found that no reasonable jury could find that Sola failed to cure under 19A(7).  *See* Docket No. 105 at 4-5.  Contrary to the Trustee's argument, this finding did not require any assessment of credibility, nor did it require the Court to substitute its judgment for that of the jury, as the Court found that the uncontradicted evidence permitted no other rational conclusion.

Moreover, the Court found as a matter of law that Sola's license agreements were not "interests in the lease," and therefore their assignment could not be a breach. Thus, the Trustee's argument that paragraph 17C of the lease applied to Sola's assignment fails.  This provision only prohibits assignment of more than 25% of the tenant's interest in the lease without permission and, as a matter of law, Sola did not

assign its interests in the lease.  Therefore, no reasonable jury could find that Sola

breached the lease by assigning its license agreements and the Court did not err in

granting Sola's motion for judgment as a matter of law on the Trustee's counterclaim for

breach of contract.

### 3.   Instruction on Interests in the Lease

The Trustee contends that the Court erred by finding that Sola's license

agreements were not interests in the lease and moreover that the Court's instruction

informing the jury of this legal conclusion was prejudicial.  The Court based its ruling on

cases holding that licenses are not interests in real property under Colorado law.  *See*

Docket No. 105 at 5-6, 44 (citing *Radke v. Union Pacific R. Co.*, 334 P.2d 1077, 1086

(Colo. 1959); *Welsch v. Smith*, 113 P.3d 1284, 1289 (Colo. App. 2005); *American Coin-*

*Meter of Colo. Springs v. Poole*, 503 P.2d 626, 627 (Colo. App. 1972)).  The Trustee

does not provide any contrary authority; rather, she contends that these cases are

inapplicable because they only address whether licenses are interests in real property.

The relevant question here, according to the Trustee, is whether the licenses were

interests in this particular lease.  *See* Docket No. 118 at 8.  The Trustee's argument is

logically flawed.  A lease itself is an interest in real property, also known as a leasehold

estate.  *See Radke*, 334 P.2d at 1086.  The lease prohibited Sola from transferring its

interest in its leasehold estate, but, as the licenses were not interests in real property,

they also could not be interests in Sola's leasehold estate.  The Trustee provides no

argument or authority to contradict this conclusion.  Therefore, Court did not err by

concluding as a matter of law that the licenses were not interests in the lease.

Furthermore, the Court did not err by instructing the jury that the licenses were not interests in the lease.  This instruction properly stated the law and clarified the meaning of  paragraph 17A of the lease.  The jury also properly had to consider this provision in order to assess the Trustee's counterclaim that Sola breached the lease by entering into licenses instead of subleases.  Regardless, even if the Trustee is correct that this instruction was irrelevant, the Trustee provides no basis for the Court to find that this supposed error was prejudicial or that the instruction "substantially and adversely" affected its rights.  *See Henning*, 530 F.3d at 1217.  The Trustee argues that the instruction did nothing more than instruct the jury that the Court had ruled against the Trustee on a legal issue; however, the instruction in no way alerted the jury to the Trustee's disagreement with the Court on this point.  Instead, it clarified a point of law for the jury which was relevant to a provision of the lease that they were properly considering and about which they had heard evidence.  Therefore, the Trustee is not entitled to a new trial on these grounds.

### *4.  Jury's Finding on Counterclaims*

The Trustee argues she is entitled to a new trial because the jury's rejection of the Trustee's counterclaim was not supported by the evidence.  According to the Trustee, the only reasonable interpretation of paragraphs 17A, 17B and 6A of the lease is that licenses were not permitted under the lease.  The Court disagrees.  The provisions of the lease are ambiguous when read together and the jury could reasonably have concluded that the parties intended to allow Sola to enter into license agreements.  Paragraph 17A of the lease prohibits the property to be occupied by any

licensee "[e]xcept as hereinafter specifically authorized."  Pl.'s Ex. 9 at 8.  Paragraph 17B prohibits subletting without consent "[e]xcept for specific uses, licenses and subleases to salon professionals and others as set forth in paragraph 6A" and paragraph 6A allows for the operation of a salon with "individual studios subleased to" various enumerated salon professionals, including stylists.  *Id.* at 9, 4.  The jury could reasonably conclude from these ambiguous provisions that the parties intended to allow license agreements and that 17B allowed for licenses.  The jury could have further reasonably concluded that 6A was intended to specify the types of salon professionals Sola's studios would house and that it erroneously omitted the word "licenses."  Therefore, the jury verdict is not "clearly, decidedly, or overwhelmingly against the weight of the evidence" and trustee is not entitled to a new trial on these grounds.  *See M.D. Mark, Inc.* 565 F.3d at 762.

### 5.  Duplicative Damages

The Trustee argues that the jury awarded Sola a double recovery when it awarded both $68,664 in damages for the Trustee's miscalculation of the cap on Sola's pro-rata share of operating expenses and $24,705 for the Trustee's failure to limit Sola's charges for janitorial expenses.  According to the Trustee, the janitorial expenses were included in the overall operating expenses and the $68,664 award and, therefore, the second award constituted a double recovery.

The Court will not alter a jury verdict for duplication of damages unless "the verdict amount is not within the range of evidence."  *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1079 (10th Cir. 2008).  A jury verdict will

be upheld even "where the chance is slight that the jury arrived at the award without erroneously duplicating" so long as the verdict can be "explained by the evidence in the record." *Id.* "Where, however, the jury verdict cannot be explained by evidence in the record and duplication is apparent, 'the court, either sua sponte or on motion of a party, should reduce the judgment by the amount of the duplication,' and thereby prevent double recovery." *Id.* (quoting *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997)).

Sola's only evidence regarding damages was the testimony of Matthew Briger. *See* Docket No. 111 at 55-60. Mr. Briger testified using a demonstrative exhibit. *See* Docket No. 109-1 at 6-7. He explained that the Trustee overbilled Sola for $46,755.86 and $23,651.38 in operating expenses, totaling $70,407.24. *See* Docket No. 111 at 57-58. The demonstrative exhibit included an additional $12,460.19 in overcharges, which Mr. Briger testified was based on numbers that he had "less confidence" in and which he thought included "some inaccuracies." *See id.* at 59. Mr. Briger further stated that $70,407.24 would be fair compensation for the inappropriate application of the 105% cap. *See id.* at 59-60.

Although Mr. Briger's testimony did not specifically address whether his calculations included the overcharges for janitorial services, Sola's exhibit 127 included notes explaining the methodology Mr. Briger used in generating these numbers. These notes explain that his calculations were "inclusive of janitorial to premises" and calculated the amount Sola should have been paying under the lease both by applying a 5% cap and by reducing all of the charges, including the janitorial to Sola's premises,

14

to Sola's 39% share.  *See* Docket No. 109-1 at 7.  Therefore, Mr. Briger's request for compensation regarding the Trustee's miscalculation of the cap included janitorial services.

Peter Simon testified that Sola was charged $750 per month for 100% of the janitorial services to Sola's premises.  *See* Docket No. 107 at 47.  Sola's third claim for relief maintained that Sola should only have been charged for 39% of this expense, or $457.50 per month.  The jury found in favor of Sola on this claim.  *See* Docket No. 102-1 at 4.  Sola's counsel told the jury to award Sola $457.50 times fifty-four months for a total of $24,705, precisely the amount the jury awarded.  *See* Docket No. 106 at 6.  But these monthly charges were also included in the damages awarded for the incorrect cap on operating expenses.

Sola is unable to explain how the $68,664 award does not contain duplicate damage for the separate $24,705 award for janitorial services.  Sola hypothesizes that the jury may have taken the $82,867.43 figure that Mr. Briger testified about (which he did not think was accurate) and discounted this amount by $14,203.43 to avoid duplication, arriving at the $68,664 award.  *See* Docket No. 115 at 7-8.  This explanation, however, does not account for Mr. Briger's inclusion of all the janitorial charges in his calculations.  If the jury applied this methodology and credited the $82,867.43 figure, it would have reduced $82,867.43 by the full $24,705, arriving at $58,162.43 instead of $68,664.  Moreover, Sola's counsel conceded in his rebuttal closing argument, after defense counsel raised the issue of double recovery in his

closing, that "[t]here may be some double billing" in the $24,705 award for the janitorial services.  Docket No. 106 at 52.

Because it is clear from the jury verdict form and the evidence that duplication occurred, the Court must reduce the verdict by the amount duplicated.  *See Morrison Knudsen*, 532 F.3d at 1080.  In *Morrison*, the court noted that a court fashioning a remedy for double recovery may either (a) reduce the jury verdict by the amount of damages not supported by the evidence or (b) order a remittitur or order a new trial on damages.  *See id.*  Here, as in *Morrison*, the most appropriate remedy is an order of remittitur.  However, the Seventh Amendment requires that Sola be given the option of either accepting the remittitur or proceeding with a new trial solely on damages.  *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1225 (10th Cir. 2004).  Therefore, the Court will order a remittitur or a new trial on damages at the election of Sola.

## IV.  UNRESOLVED CLAIMS

Several claims and counterclaims for equitable relief remain unresolved after the jury's verdict.  The Court will address these claims in turn.

### A.  Sola's Outstanding Claims

#### 1.  Sola's First Claim for Declaratory Relief

Sola's first claim seeks declaratory relief clarifying the parties' obligations under the lease.  Jurisdiction in this case is based on diversity and, therefore, although Colorado law applies to the substantive issues in this case, federal law governs the standards for granting a declaratory judgment.  *See, e.g.*, *State Farm Fire & Cas. Co. v.*

*Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994) (applying federal standards in diversity

case).  Thus, the Declaratory Judgment Act governs these claims.  The Act provides:

"In a case of actual controversy within its jurisdiction . . ., any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is

or could be sought."  28 U.S.C. § 2201(a).  The Act creates two separate requirements

that parties seeking a declaratory judgment must meet.  *Surefoot LC v. Sure Foot*

*Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).  First, there must be an "actual

controversy" at issue.  *Surefoot LC*, 531 F.3d at 1240 (noting that the "actual

controversy" requirement is tied to the case-or-controversy requirement of Article III of

the United States Constitution).

     In determining if an "actual controversy" exists, the Supreme Court noted that its

previous decisions require

> that the dispute be definite and concrete, touching the legal relations of
> parties having adverse legal interests; and that it be real and substantial
> and admit of specific relief through a decree of a conclusive character, as
> distinguished from an opinion advising what the law would be upon a
> hypothetical state of facts.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation

marks and alteration marks omitted).  Stated otherwise, "[b]asically, the question in

each case is whether the facts alleged, under all the circumstances, show that there is

a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*,

549 U.S. at 127.

Once a district court satisfies itself that an "actual controversy" exists, the court then turns to the second requirement under the Declaratory Judgment Act.  This step embraces the permissive language of the Act – that a district court  "*may* declare the rights and other legal relations."  28 U.S.C. § 2201(a) (emphasis added).  A district court must consider several case-specific factors when deciding whether to exercise its authority to issue a declaratory judgment.  *Surefoot*, 531 F.3d at 1240.  These various "equitable, prudential, and policy arguments" weigh on the court's discretionary decision to either entertain or dismiss a declaratory judgment claim.  *MedImmune*, 549 U.S. at 136.

Sola requests several declarations relating to the very issues that were litigated during the trial and addressed in the special verdict form.  These include whether Sola's pro rata share of operating expenses is 39%; whether Sola's cap on increases in its share of operating expenses is five percent per year, on a non-cumulative basis; and whether janitorial expenses are included as an operating expense and subject to the 5% cap.  *See* Docket No. 19 at 6.  No actual controversy remains regarding these issues, as each was resolved by the jury's verdict.  *See* Docket No. 102-1; *MedImmune*, 549 U.S. at 127.  Therefore, Sola's first three requests for declaratory relief will be denied as moot.

The final declaration requested by Sola relates to whether the lease as amended requires Sola to pay its landlord revenue from its stylists.  *See* Docket No. 104 at 3; Docket No 19 at 6.  In its original counterclaims, the Trustee included a claim for breach of lease on the basis that Sola had violated paragraph 17E by failing to pay the Trustee

portions of the revenue it received from its stylists.  *See* Docket No. 39 at 7.  The Trustee withdrew this claim during trial.  The Trustee argues that this withdrawal now moots Sola's request for declaratory relief.  *See* Docket No. 105 at 2.  The Court disagrees.  Sola's claim for declaratory relief was not predicated on the Trustee pursuing a counterclaim on the same issue, nor did the Trustee's withdrawal of its counterclaim constitute a concession that the lease does not permit the Trustee to recover rents from Sola's stylists.  Thus, a live controversy remains on this issue and declaratory relief may be proper to resolve it.  *See MedImmune*, 549 U.S. at 127.

As the Court reasoned in its summary judgment order, paragraph 17E of the lease applies only to subleases and not to license agreements.  *See* Docket No. 85 at 11-12.  The jury further found that the lease did not prohibit Sola from entering into licenses rather than subleases.  *See* Docket No. 102-1 at 5.  Based on these findings, the Court concludes that 17E does not apply to the rents Sola receives from its stylists pursuant to license agreements.  The Court will therefore grant Sola's fourth request for declaratory relief.

### 2. *Sola's Fifth Claim for Accounting*

Sola's fifth claim for relief sought an accounting of all monies related to Fashion Plaza's operating expenses and Sola's pro-rata share thereof.  *See* Docket No. 19 at 8-9.  Sola now seeks to withdraw this claim without prejudice.  *See* Docket No. 104 at 4. The Trustee does not appear to object.  *See* Docket No. 103 at 1-2 (stating that "there is nothing for the Court to do other than note in its Order for Judgment that [this claim

was] withdrawn").  Therefore, the Court will dismiss this claim without prejudice.  *See*

Fed. R. Civ. P. 41(a)(2).

### 3.  Sola's Claims for Reformation

Sola's eighth and ninth claims for reformation of the lease were pled in the

alternative and argued that, if the Court did not find in favor of Sola's interpretation of

paragraph 17E of the lease, relating to payment of rent from subleasees, and article 5

of the lease, relating to the 5% cap, the Court should reform the lease to reflect the

intentions of the parties.  *See* Docket No. 19 at 9-10.  As the Court has granted Sola's

fourth request for declaratory relief regarding paragraph 17E and the jury found in favor

of Sola's interpretation of the 5% cap, these claims are now moot and will be dismissed.

*See Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1211-12 (10th Cir. 2005) (a case

is moot where the issues are no longer live and the parties lack a legally cognizable

interest in the outcome).

### 4.  Sola's Claim for Equitable Estoppel[1]

Sola's amended complaint sought relief based on a theory of equitable estoppel.

*See* Docket No. 19 at 9.  "In Colorado, promissory estoppel is available as a theory of

recovery when breach of contract fails."  *Marquardt v. Perry*, 200 P.3d 1126, 1131

(Colo. App. 2008).  Therefore, as the jury found in favor of Sola on its three breach of

contract claims, the Court will deny Sola's claim for equitable estoppel.

---

[1] Sola states that this claim was dismissed by the Court during trial, *see* Docket No. 104 at 2; however, Sola does not provide a citation to the record in support and the trial transcripts do not reflect that the Court addressed Sola's estoppel claim.  Rather, the transcripts show the Court addressing only the Trustee's estoppel defense.  *See* Docket No. 113 at 9-10.  The Court will therefore address Sola's estoppel claim in this order.

### B. **The Trustee's Outstanding Counterclaims**

#### *1. The Trustee's First Counterclaim for Declaratory Relief*

The Trustee's counterclaim for declaratory relief requests an order from the Court declaring that the terms of the lease are not ambiguous.  In its summary judgment order, the Court found that the terms of the lease are legally ambiguous.  *See* Docket No. 85.  Therefore, the Trustee's claim for declaratory relief will be denied.

#### *2. The Trustee's Third Counterclaim for Termination of Lease*

The Trustee also sought termination of the lease, requesting an order declaring that the lease was terminated pursuant to the Trustee's notices.  The Court found that Sola did not breach the lease by assigning its license agreements or by failing to remit payments from its licensees and the jury found Sola did not breach the lease by entering into licenses.  Therefore, Sola did not breach the lease and the Trustee's counterclaim for termination will be denied.

#### *3. The Trustee's Fourth Claim for Rescission*

The Trustee seeks to withdraw its final counterclaim for rescission.  This counterclaim sought rescission of the lease in the event the Court concluded that the lease, and in particular article 17E, was not an enforceable agreement.  *See* Docket No. 39 at 9.  Sola appears to object to this counterclaim being dismissed without prejudice, although its objection vaguely refers to all the Trustee's counterclaims.  *See* Docket No. 104 at 6.  Sola does not, however, provide any rationale for why this claim should be dismissed with prejudice.  Fed. R. Civ. P. 41(a)(2) permits a district court to dismiss claims without prejudice "upon such terms and conditions as the Court deems

proper." *Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991).

Fed. R. Civ. P. 41(c) applies this provision to counterclaims, such as the Trustee's.

"Absent 'legal prejudice' to the defendant, the district court normally should grant such a

dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997) (quoting *Andes

v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986)).  Sola has made no showing of

legal prejudice here; therefore, the Court will dismiss the Trustee's claim for rescission

without prejudice.

## V.  CONCLUSION

Based on the foregoing, it is

**ORDERED** that the Trustee's Renewed Motion for Judgment as a Matter of Law

[Docket No. 109] is **DENIED**.  It is further

**ORDERED** that the Trustee's Motion for New Trial [Docket No. 109] is

**GRANTED** in part and **DENIED** in part.  Sola Salon shall, by written notice filed on or

before March 3, 2011, elect either a remittitur of damages to reduce the total amount of

damages to $68,665.00 (consisting of $43,959.00 on Sola's first claim, $1.00 on its

second, and $24,705.00 on its third) or a new trial limited to the issue of damages.  If

Sola elects remittitur, judgment will enter in that amount.  If not, a new trial on the issue

of damages will be ordered.

DATED February 16, 2011.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge